IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No.: 2:05-1752-PMD |
| v. ) | |
| ) | **ORDER** |
| $78,850.00 IN UNITED STATES CURRENCY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court upon the claimants' motion to dismiss. For the reasons set forth herein, the court denies the claimants' motion.[1]

**BACKGROUND**

This is a civil action *in rem* brought pursuant to the provisions of 18 U.S.C. §§ 981(a)(1)(A) and (C), and 21 U.S.C. § 881(a)(6). Specifically, the United States seeks the forfeiture of $78,850.00, seized from Luis Munoz ("Munoz") and Jose Edwin Gomez Serna ("Gomez") by Deputy Joseph Burnette ("Burnette") of the Dorchester County Sheriff's Office during the traffic stop of a freightliner on Interstate 95 in St. George, South Carolina.[2] In the complaint, the United States seeks the forfeiture of this money based upon reasonable cause that it is traceable to the following: (1) proceeds furnished or intended to be furnished in exchange for controlled substances

---

[1] The claimants also filed a motion to stay discovery pending ruling on their motion to dismiss. The government opposed this motion. Because the court denies the claimants' motion to dismiss in this Order, the court finds moot the claimants' motion to stay.

[2] In the complaint, the United States acknowledges that Munoz and Gomez may have or claim an interest in the seized money by virtue of being present in the vehicle at the time Deputy Burnette seized the money. Additionally, the United States acknowledges that Henry Wilson Betancur ("Betancur") may have or claim an interest in the property by virtue of being the record title owner of the vehicle from which Deputy Burnette seized the money. (Compl. at 3.)

in violation of 21 U.S.C. §§ 841(a)(1) and 846; (2) property involved in money laundering activities in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i); (3) property involved in illegal money transmitting business in violation of 18 U.S.C. § 1960; (4) property involved in currency reporting violations in violation of 31 U.S.C. § 5313(a); and/or (5) proceeds of some other form of specified illegal activity set forth in 18 U.S.C. § 1956(c)(7).  (Compl. at 1, 2.)

The government's complaint alleges the following facts.  On December 16, 2004, at approximately 10:00 a.m., Deputy Burnette stopped a blue Freightliner truck on I-95 for following another vehicle too closely.  As the truck pulled over, Burnette observed the passenger of the truck switch seats with the driver of the truck.  Upon approaching the truck, Burnette observed Munoz in the driver's seat and Gomez in the passenger's seat.  Deputy Burnette asked Munoz for his license and the bill of lading.  After Munoz retrieved the paperwork, Munoz and Burnette walked to the back of the trailer.  When Burnette examined the bill of lading, he noticed that the original typed date of "12-15-04" had been covered with white-out, and that the handwritten date of "12-16-04" had been written in its place.  Burnette also noticed that the city "Miami" was misspelled in the address block of the bill of lading.  While at the back of the truck with Munoz, Burnette told Munoz that he was going to issue him a warning for following too closely.

Deputy Burnette asked Munoz about the details of his travel, and Munoz indicated that he was traveling from New York to Miami.  When Burnette asked Munoz if his "co-driver" was sleeping, Munoz replied "yes."  Burnette asked Munoz whether there was anything illegal in the truck, and Munoz replied "no."  However, when Burnette asked Munoz whether there was any currency in the truck, Munoz broke eye contact, looked down toward the truck, and said "no." According to the complaint, Munoz granted Deputy Burnette permission to search the truck.

2

Burnette then spoke to Gomez and asked him if he drives trucks. Gomez responded "no." Burnette asked Gomez for identification, and Gomez handed Burnette an International Drivers Permit from the United Nations. Burnette asked Gomez whether there was anything illegal in the truck, and Gomez responded "no." However, when Burnette asked Gomez whether there was any currency in the truck, Gomez said "no," then paused and turned to pick up a ten dollar bill while stating "ten dollars." Burnette asked Gomez for permission to search the truck, which Gomez granted. At this point, Charleston Deputy Allen Williams arrived on the scene.

When Deputies Williams and Burnette searched the truck, they noticed several loose rubber bands on the floor in the front of the bed, a tan suitcase with a small lock on it, and what appeared to be a "tally sheet" on a small piece of paper. Written on the paper was the following: "1-800, 5-3500, 10-8000, 20-42000 and 100-5000." Williams noticed a large hinge on the rear of the bottom bed that looked fabricated and not factory installed. When Williams asked Munoz if the tan suitcase was his and where the key was, Munoz stated that the "key is in his jacket pocket."

When Williams introduced his drug detecting dog, "FAXX," to various areas of the truck, the dog alerted positively to the rear of the bed near the sleeping area where the non-factory hinge was located. While FAXX searched the truck, Deputy Burnette asked Munoz whether the tan suitcase was his, and Munoz responded "yes." Burnette asked what was in it, and Munoz responded "candle and stuff." When the deputies opened the suitcase, they observed several black plastic bags containing candles and approximately eight cans of disinfectant spray. Burnette also located a bag in the suitcase that contained $19,600.00 wrapped in rubber bands. Munoz said that the money was not his but that he was taking it to some unidentified person in Miami. Williams then located similarly wrapped additional currency totaling $47,000.00 in a black Polo bag. The currency in the

3

Polo bag was packaged in ten individual bundles inside a black plastic bag, and there were six bundles of clothes inside the Polo bag. Burnette asked Munoz if the bag was his, and he said "yes." When Burnette asked Munoz whether the currency was his, he said "no." Gomez also said that the currency was not his. Deputies found a white plastic "Duane Read" shopping bag in the passenger side compartment of the truck, which contained currency totaling $12,250.00. Munoz and Gomez told Burnette that this currency was not theirs.

While searching the bed located in the sleeping area of the cabin, deputies were unable to lift the bed, indicating to the deputies that there was a possible hidden compartment under the bed. When Burnette asked Munoz whether any more drugs or money was in the truck, Munoz answered that he did not know. The deputies located bondo under the mattress in two spots; once the deputies looked under the truck, they located holes in the underside and one nut and washer. The deputies therefore pried up the bed and discovered an "after market" compartment as well as two large screws. The inside of this compartment was painted black.

Based on the aforementioned alleged facts and circumstances, Williams and Burnette seized the truck and the currency, and at approximately 11:30 a.m., Special Agents Willis, Faison, and Orr arrived and met with the deputies.[3] Willis and Orr advised Munoz and Gomez of their Miranda rights, which they subsequently waived. When asked questions about their trip from New York to Miami, however, Munoz and Gomez answered the questions inconsistently.

After the United States seized the money, claimants Betancur, HB Transport, and Munoz filed a claim for the return of the money and obtained local counsel in South Carolina. On

---

[3] Pursuant to negotiations between the claimants' counsel and DEA agents, Betancur's truck was returned a few months after it was seized.

December 6, 2005, the claimants filed a motion to transfer venue from the District of South Carolina to the United States District Court for the Southern District of Florida in Miami. On March 9, 2006, this court filed an Order denying the claimants' motion to transfer venue.

Subsequently, the claimants filed an answer to the government's complaint, and then on May 4, 2006, the claimants filed a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the Fourth Amendment of the United States Constitution, entitled "motion to dismiss forfeiture lawsuit for failure to establish probable cause for seizure." The government has filed a response in opposition to the claimants' motion, and the claimants have filed a reply.

## **STANDARD OF REVIEW**

Under the usual analysis of a Rule 12(b)(6) motion, such motion should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claims that entitles him to relief. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir.1999). The complaint should not be dismissed unless it is certain that the plaintiff is not entitled to relief under any legal theory that plausibly could be suggested by the facts alleged. *See Mylan Labs. Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Further, "[u]nder the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the court to infer that all the required elements of the cause of action are present." *Wolman v. Tose*, 467 F.2d 29, 33 n. 5 (4th Cir. 1972).

As explained more fully below, in the present case, the court evaluates the government's complaint not only in light of the usual Rule 12(b)(6) analysis, but also in light of the standards set forth in the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") and Rule E(2)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims.

5

**DISCUSSION**

**I.     The Forfeiture Process**

Congress enacted CAFRA "[t]o provide a more just and uniform procedure for Federal civil forfeitures." Pub. L. No. 106-185, codified, in part, at 18 U.S.C. §§ 981 and 983. Although CAFRA sets forth the procedure to follow when seeking to forfeit property, other federal statutes define what property is forfeitable. For example, 21 U.S.C. § 881(a)(6) makes forfeitable: "[a]ll moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical violation of this subchapter, all proceeds traceable to such an exchange, . . . ." Section 881(a)(6) of Title 21 further provides that "[a]ny property subject to forfeiture to the United States under this section may be seized by the Attorney General in the manner set forth in section 981(b) of Title 18." *See* 21 U.S.C. § 881(a)(6).

Pursuant to section 981(b), seizures must be made pursuant to a warrant or, if made without a warrant, at the time of seizure, there must be probable cause to believe the property is subject to forfeiture and the seizure must be made pursuant to a lawful search or arrest or pursuant to some other exception to the Fourth Amendment warrant requirement. 18 U.S.C. § 981(b)(2)(B). "The forfeiture action may also be based on forfeitable property seized by a state or local agency and transferred to a federal agency." *United States v. $110,873.00 in U.S. Currency*, 2004 WL 2359726, *2 (N.D. Ohio 2004) (unpublished) (citing 18 U.S.C. § 981(b)(2)(B)(i)).[4] Once a valid seizure has

---

[4] Section 981(b) specifically provides that:

Seizures pursuant to this section shall be made pursuant to a warrant obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure, except that a seizure may be made without a warrant if –
   (A) a complaint for forfeiture in rem has been filed in the United States district court and the court issued an arrest warrant in rem pursuant to the

6

taken place, the seizing agency must follow CAFRA's general rules for forfeiture. *See* 21 U.S.C. § 983 (setting forth various notice deadlines and procedures for claiming property that has been seized).

Pursuant to CAFRA, the government bears the burden of proving by a preponderance of the evidence that the property at issue is subject to forfeiture. *See* 18 U.S.C. § 983(c)(1).[5] To meet this burden, the government may rely on evidence obtained after the filing of the forfeiture complaint. 18 U.S.C. § 983(c)(2). "[I]f the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3). Moreover, CAFRA specifically provides that "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish forfeitability of the property." 18 U.S.C. § 983(a)(3)(D).

In their motion, claimants seek dismissal of the government's forfeiture complaint, asserting

---

Supplemental Rules for Certain Admiralty and Maritime Claims;
(B) there is probable cause to believe that the property is subject to forfeiture and –
    (i) the seizure is made pursuant to a lawful arrest or search; or
    (ii) another exception to the Fourth Amendment warrant requirement would apply; or
(C) the property was lawfully seized by a State or local law enforcement agency and transferred to a federal agency.

18 U.S.C. § 981(b)(2).

[5] Forfeiture proceedings commenced prior to the effective date of CAFRA applied a lesser standard of proof – probable cause. *See United States v. $80,180.00 in U.S. Currency*, 303 F.3d 1182 (9th Cir. 2002) ("CAFRA transferred the burden of proof from the claimant to the government and required the government to establish forfeiture by a preponderance of the evidence rather than by the lower probable cause standard . . . .").

7

that there was no probable cause to seize the truck and money on the date of the seizure. Interestingly, although the claimants emphasize the differences between a seizure and a forfeiture, the claimants seem to confound certain distinct issues related to probable cause, in that they contest both the legality of the initial search and seizure and the Government's showing as to a connection between the currency and criminal activity. Accordingly, for the sake of clarity, the court will address the following issues separately: (1) whether the seizure of the truck and currency itself was lawful, i.e., whether Deputy Burnette had sufficient cause to initiate the traffic stop and conduct the subsequent search and seizure;[6] and (2) whether the government had probable cause at the time of the seizure to believe that the seized currency was connected to a criminal offense. *See United States v. $200,255.00*, 2006 WL 1687774, *6 (M.D. Ga. June 16, 2006). The court will first address the inquiry regarding the initial search of the truck and seizure of the currency.

### A.     The Search of the Truck and Seizure of the Currency

The Fourth Amendment[7] applies to the seizure and subsequent civil forfeiture of property following a warrantless stop and search. *See One 1958 Plymouth Sedan v. Commonwealth of Penn.*, 380 U.S. 693 (1965) (holding that the Fourth Amendment's exclusionary rule applies to civil forfeiture proceedings)**.** Moreover, the Fourth Amendment's requirements appear in the statutory

---

[6] This inquiry includes an evaluation of whether Munoz and Gomez gave valid consent to search the truck. Although the claimants do not challenge the consent given by Munoz and Gomez in their actual motion, they do challenge the consent in their reply. Specifically, the claimants point out that Munoz and Gomez speak little English, and they assert that the officers did not have valid consent to search the truck and the closed bags therein. Ultimately, this argument bears on whether the seizure of the currency was itself lawful, not on whether the government had probable cause at the time of the seizure to believe that the currency was connected to a criminal offense.

[7] The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV.

framework of CAFRA, in that CAFRA specifically requires that seizures be made pursuant to a warrant or be based upon probable cause and made pursuant to a lawful search or arrest. *See* 18 U.S.C. § 981(b)(2)(B). The forfeiture action may also be based on property lawfully seized by a state or local law enforcement agency and transferred to a federal agency. *See* 18 U.S.C. § 981(b)(2)(C). Thus, the claimants may challenge the legality of the seizure of the currency, "much like a defendant in a criminal case who brings a motion to suppress."[8] *$200,255.00*, 2006 WL 1687774 at *6 (citing all of the following cases: *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099 (11th Cir. 2004) (addressing a civil forfeiture claimant's motion to suppress evidence obtained during the search of a house); *United States v. 4,432 Mastercases of Cigarettes*, — F.3d —, 2006 WL 1511773 (9th Cir. June 2, 2006) (addressing a civil forfeiture claimant's motion to suppress cigarettes seized during a warrantless search of a storage area); and *United States v. $99,990*, No. 01-5685, 2003 WL 21698849 (6th Cir. July 17, 2003) (unpublished) (addressing a civil forfeiture claimant's motion to suppress currency seized during search of hotel room and car)).

In the present case, although the claimants challenge the legality of the seizure, they have not filed a motion to suppress, but rather, they have filed a motion to dismiss pursuant to Federal Rule of Procedure 12(b)(6) and the Fourth Amendment. As discussed more fully below, the standard for a motion to dismiss is whether the complaint satisfies the requirements of Rule E(2)(a)

---

[8] Of course, any challenge pursuant to the Fourth Amendment requires inquiry into whether the individual initiating such challenge has standing to do so. *See Rakas v. Illinois*, 439 U.S. 128, 143 (1978) (stating that a defendant must have a "reasonable expectation of privacy" in the place being searched to bring a Fourth Amendment challenge). However, the court need not consider the issue of standing in this Order because regardless of whether the claimants in fact have standing, the court cannot determine whether the search and seizure were legal merely from the face of the complaint in the context of a 12(b)(6) motion.

9

of the Supplemental Rules for Certain Admiralty and Maritime Claims, which requires that the complaint "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Fed. R. Civ. P. Supp. R. E(2)(a). In contrast, a motion to suppress does not address the validity of the face of the complaint, but rather, it addresses whether particular evidence should be excluded because it was illegally acquired. Moreover, with respect to a motion to suppress, the district court can make findings of fact as well as rulings of law. *United States v. Stevenson*, 396 F.3d 538, 540 (4th Cir. 2005).

Here, to the extent that the claimants challenge the legality of the warrantless search and subsequent seizure, such challenge simply "cannot be resolved on the face of the complaint, in the context of a Motion to Dismiss." *$200,255.00*, 2006 WL 1687774 at *7. Accordingly, the court denies the claimants' motion to dismiss insofar as it attacks the legality of the initial search following the stop and the seizure. In the context of this case, the court finds that a motion to dismiss simply is not the proper vehicle to make such a challenge. Rather, the claimants may file a motion to suppress should they so desire; upon the filing of such a motion, the court can determine whether a hearing is necessary.[9] *See also $200,255.00*, 2006 WL 1687774 at *7 (denying the claimants' motion to dismiss challenging the legality of the seizure of currency and instructing the claimants to file a motion to suppress should they so desire); *see also United States v. $482,627.00*, 2005 WL 1140603, *3 (W.D. Tex. May 16, 2005) (unpublished) ("[A]n illegal search and seizure

---

[9] As previously mentioned, upon the filing of a motion to suppress, the court can make factual and legal findings. For instance, the court can evaluate the validity of the initial traffic stop, whether Munoz and Gomez granted valid consent to search the truck, and whether the officers exceeded the scope of consent granted in conducting the subsequent search. The claimants have raised these latter two issues in their reply to the government's response.

10

does not immunize goods from forfeiture so long as the Government satisfies its burden of proof by untainted evidence.")[10]; *United States v. One 1974 LearJet 24D, Serial Number 24D-290, Mexican Registration XA-RMF*, 191 F.3d 668 (6th Cir. 1999) (stating that seizure and forfeiture each implicate different evaluations of probable cause and noting that a lack of probable cause to seize the plane "would not, by itself, have ended the forfeiture proceedings"); *United States v. $30,000.00*, 30 Fed.Appx. 473, 480 (6th Cir. 2002) (unpublished) ("[T]he absence of probable cause for a seizure may simply result in suppression of the evidence in a forfeiture proceeding. However, the failure to establish requisite probable cause for forfeiture precludes forfeiture.").

### B.  Probable Cause Substantially Connecting the Currency to Criminal Activity

In addition to asserting that there was no probable cause for the initial seizure, as discussed above, the claimants also assert that there "remains" no probable cause. The claimants state that the complaint should be dismissed "because there was no and remains no probable cause for the seizure and attempted forfeiture of the defendant currency." (Mot. at 6.) The claimants cite numerous pre-CAFRA cases in support of their assertion that the totality of the factors does not demonstrate probable cause "substantially connecting" the currency to illegal narcotics activity. Thus, the court will evaluate Plaintiffs' motion insofar as it alleges that the government has failed to demonstrate a substantial connection between the currency and criminal activity. Because the claimants bring their motion pursuant to Rule 12(b)(6), however, the court first will set forth the applicable framework for evaluating the claimants' argument.

As previously mentioned, pursuant to CAFRA, the government bears the burden of proving

---

[10] As the court noted in *$482,627.00*, "there appears to be some confusion and/or disagreements among the Circuit Courts of Appeals regarding the extent of the required suppression." 2005 WL 1140603, *3, n.1 (collecting cases).

11

by a preponderance of the evidence that the property at issue is subject to forfeiture. *See* 18 U.S.C. § 983(c)(1). To meet this burden, the government may rely on evidence obtained after the filing of the forfeiture complaint. 18 U.S.C. § 983(c)(2).[11] "[I]f the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3). "However, the Government need not satisfy the burden imposed by § 983(c)(3) at the initial pleading stage." *$200,255.00*, 2006 WL 1687774 at *7.

Additionally, the following provision of CAFRA is of particular significance to this case: "[N]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C. § 983(a)(3)(D); *see United States v. 630 Ardmore Drive, City of Durham*, 178 F.Supp.2d 572, 580-81 (M.D.N.C. 2001) ("Adequate evidence, as referred to in the statute, is not defined, but based upon a plain reading of the statute, it would appear that the Government's forfeiture claim can advance forward in the face of a 12(b)(6) motion to dismiss even if the Government's complaint does not provide all the facts that would allow the Government to ultimately succeed in the forfeiture proceeding.").[12] "Since its enactment, courts have tried to square this provision with the

---

[11] The claimants point out that although CAFRA permits the government to use after-acquired evidence to establish the forfeitability of seized property, CAFRA does not permit the government to use after-acquired evidence to establish probable cause to initially seize the property because such an interpretation of CAFRA would run afoul of the Fourth Amendment. The court agrees with the claimants. However, the court has already determined that it cannot make a proper probable cause determination based merely on the face of the complaint in the context of the claimants' Rule 12(b)(6) motion.

[12] Read in conjunction with the rest of CAFRA, section 983(a)(3)(D) means that the government's complaint cannot be dismissed for failure to have enough evidence, at the time of filing, to prove by a preponderance of the evidence that the seized property is subject to forfeiture.

notice pleading requirements of Rule 8(c) of the Federal Rules of Civil Procedure and Rule E(2)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims, which is applicable to in rem actions such as this one." *$200,255.00*, 2006 WL 1687774 at *8 (citing 18 U.S.C.A. § 983(a)(3)(A), which requires the government to file a complaint for forfeiture in the manner set forth in Rule E(2)(a)); *see also United States v. Mondragon*, 313 F.3d 862, 864 (4th Cir. 2002) ("A civil forfeiture complaint against property allegedly connected to drug trafficking must meet the particularity in pleading requirement of Supplemental Rule E(2)(a)."). Pursuant to Supplemental Rule E(2)(a), a complaint must "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Fed. R. Civ. P. Supp. R. E(2)(a).

In the present case, the claimants state in their reply to the government's response in opposition that they "have not challenged the pleading particularity requirements of the Government's complaint." (Reply at 12.) Nevertheless, because the claimants have brought their challenges pursuant to a Rule 12(b)(6) motion, this inquiry is relevant. Therefore, for the sake of thoroughness, the court will address whether the government has satisfied Rule E(2)(a)'s particularity requirement so as to preclude dismissal pursuant to Rule 12(b)(6).

In *Mondragon*, the Fourth Circuit Court of Appeals outlined the "particularity" requirement set forth in Rule E(2)(a).[13] *Id*. at 865. The court stated:

---

This section does not, however, remove the requirement that the government have probable cause at the time of seizure.

[13] In *$200,255.00*, the district court for the Middle District of Georgia stated:

Prior to the enactment of CAFRA, in order to avoid dismissal, a civil forfeiture complaint was required to allege sufficient facts to support a reasonable belief that

13

> In light of CAFRA's change in the burden of proof, it is a bit awkward to say now that Rule E(2)(a) requires the complaint to allege facts sufficient to support a reasonable belief that the government can establish probable cause for forfeiture at trial. We therefore decline to adopt this interpretation of Rule E(2)(a). A useful point survives the pre-CAFRA opinions, however. As we have said, most of these opinions begin by recognizing the general standard that a complaint under Rule E(2)(a) must allege sufficient facts to support a reasonable belief that the property is subject to forfeiture. We, too, adopt this general standard.
>
> . . . We will evaluate the government's complaint in light of the language of the rule, keeping in mind that the complaint must at bottom allege facts sufficient to support a reasonable belief that the property is subject to forfeiture.

*Id.* at 865-66.

In *Mondragon*, the court evaluated the facts alleged in the complaint before concluding that the complaint satisfied the particularity requirement. *Id.* at 866. Specifically, the court found that the complaint provided sufficient particularity to satisfy the pleading requirement of Rule E(2)(a) where the complaint specified the following: (1) what currency was seized; (2) how it was packaged; (3) when it was seized; (4) where it was seized; (5) by whom it was seized; (6) that it was a large sum of currency in unusual packaging; (7) that it was stored in a hidden compartment; and (8) that the drug dog alerted to the area of the car near the hidden compartment." *Id.* The court stated:

> In sum, the complaints' factual allegations, which we have just discussed, permit a reasonable belief for pleading purposes that the currency was the proceeds of drug trafficking and was therefore subject to forfeiture. The complaint states the circumstances giving rise to the forfeiture claim with sufficient particularity that Mondragon could have commenced a meaningful investigation of the facts and drafted a responsive pleading. Rule E(2)(a)'s particularity requirement was therefore satisfied.

---

the government could demonstrate probable cause for forfeiture at trial. In 2002, however, the Court of Appeals for the Fourth Circuit concluded that the enactment of CAFRA had served to eliminate the probable cause pleading requirement.

2006 WL 1687774 at *8 (citing *Mondragon*, 313 F.3d at 865).

14

*Id.*

In the present case, the government has alleged facts similar to those alleged in *Mondragon*. *See id.* For instance, in the present case, the government's complaint includes, *inter alia*, the following allegations: (1) the amount of money seized; (2) the manner in which the currency was packaged; (3) that it was seized during a search that followed a routine traffic stop; (4) where the officers found the currency; (5) which officers seized the currency; (6) that Munoz and Gomez told inconsistent stories; (7) that the truck contained a non-factory hinge which led to a hidden compartment; (8) that the drug dog alerted to the hidden compartment; (9) that the officers found what appeared to be a "tally sheet"; (10) that the date on the bill of lading had been tampered with; and (11) that officers found several black plastic bags containing candles and approximately eight cans of disinfectant spray inside the tan suitcase. Because these allegations, when taken together, "permit a reasonable belief for pleading purposes that the currency was the proceeds of drug trafficking and was therefore subject to forfeiture," the court finds that the government has satisfied Rule E(2)(a)'s pleading requirement, and therefore, the complaint is sufficient to withstand the claimants' Rule 12(b)(6) motion to dismiss. *Id*. at 866-67; *see also $200,255.00*, 2006 WL 1687774 at *9 ("Given that this standard is all that is required of a civil judicial forfeiture complaint, the complaint is sufficient to withstand a motion to dismiss. Therefore, insofar as the Motion to Dismiss seeks dismissal for lack of probable cause connecting the currency to the sale or purchase of controlled substances, the Motion is denied.").[14]

---

[14] Moreover, as the court pointed out in *$200,255.00*, "[i]n view of CAFRA's changes in the procedural requirements, as well as the evidentiary burdens placed on the Government by CAFRA, a challenge to the sufficiency of evidence connecting the currency to a crime might more properly be brought after discovery, on a motion for summary judgment." 2006 WL 1687774, at *9, n.9.

## CONCLUSION

It is therefore **ORDERED**, for the foregoing reasons, that the claimants' motion to dismiss is hereby **DENIED.**

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**August 1, 2006**

16